Larry WALKER, et al., Plaintiffs,

v.

**MANVILLE FOREST PRODUCTS CORP., et al., Defendants.**

No. C-1-86-543.

United States District Court, S.D. Ohio, W.D.

Dec. 28, 1988.

Bruce B. Whitman, Cincinnati, Ohio, for plaintiffs.

Daniel G. Rosenthal, Cincinnati, Ohio, for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon defendants' Motion for Summary Judgment (doc. no. 18), the Report and Recommendation of the United States Magistrate (doc. no. 30) and the memoranda in response and objection thereto. The Court notes that there have been several filings with regard to submission of supplemental authority and acknowledges that this is the inevitable result of the Court's lengthy delay in deciding this matter. The Court has, however, considered all relevant applicable law concerning the issues presented in the Motion for Summary Judgment as well as the pleadings, depositions and affidavits on file. Therefore, the motions and memoranda concerning those materials have been examined and need no further specific rulings.

Plaintiff Larry Walker ("Walker") worked for defendant Manville Forest Products Corp. ("Manville") from September 1, 1983 until July 29, 1985 when his employment was terminated. Walker's Complaint alleges 1) breach of an oral employment contract, 2) promissory estoppel,

3) tortious intentional infliction of emotional distress, 4) tortious interference with a business relationship, and 5) a claim for loss of consortium asserted by Walker's wife. Defendants move for summary judgment on all of plaintiffs' claims.

The Magistrate recommended that defendants' Motion for Summary Judgment be granted as to plaintiffs' claims for breach of contract, promissory estoppel and interference with a business relationship; he further recommended that defendants' Motion for Summary Judgment be denied as to the claim for intentional infliction of emotional distress and Mrs. Walker's claim for loss of consortium. Defendants object to the conclusion of the Report and Recommendation that summary judgment be denied on the tortious intentional infliction of emotional distress and loss of consortium claims; similarly, plaintiffs object to the conclusion of the Report and Recommendation that summary judgment is proper on their claims for breach of employment contract, promissory estoppel, and tortious interference with a business relationship. The issues are now before the Court for de novo review and final resolution.

The Court has reviewed the arguments made by the parties and has applied the principles of controlling law to the facts presented. The legal standard for consideration and disposition of issues on summary judgment is well settled.

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in favor of the party opposing the motion who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for sum-

mary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986) (original emphasis).

Summary judgment on an issue should not be granted unless it is clear that a trial on that issue is unnecessary. The threshhold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party on that particular claim. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; · rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has recently stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather than as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91

L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment on a claim is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party on that particular claim. *Id.* 106 S.Ct. at 2553; *Anderson*, 106 S.Ct. at 2511.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Catrett*, 106 S.Ct. at 2553. Significantly, the Supreme Court also instructs that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson*, 106 S.Ct. at 2511. Rule 56(e) requires plaintiff to go beyond the pleadings and by his own affidavits, designate "specific facts showing that there is a genuine issue for trial." *Id.*

■ Further, there is no express or implied requirement in Fed.R.Civ.P. 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Fed.R.Civ.P. 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories and admissions on file.

■ Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Significantly, claims involving motive or intent are ordinarily not susceptible of summary adjudication. *Id.*

■ Plaintiffs bring this action against Manville, the director of human resources for Manville, Ron Hammons, and plaintiff's supervisor at the time of his discharge, Robert Mills. Plaintiffs allege that Walker could only be discharged "for just cause" and defendant asserts that plaintiff's employment was terminable "at will."

This controversy begins in April of 1983 when plaintiff was first interviewed by Jerry Parker, Manville's manufacturing manager. Plaintiff asserts and Parker denies that Parker made the comment that Manville was a good company and did not terminate except for just cause. In May of 1983, plaintiff had other interviews with members of Manville's management staff. One interview was with Parker and Tom Stephens, then president of Manville, and plaintiff maintains that Stephens made representations to plaintiff which led him to believe that Stephens agreed with the statement allegedly made by Parker with regard to the termination for just cause.

As a result of negotiations for plaintiff's terms of employment, Parker offered Walker $48,000 a year in salary, relocation expenses and a company car. No other offer was made, however, after consideration and discussion, Parker increased the offer by $1,800.00 per year. Plaintiff accepted that offer and began work as Manville's Cincinnati plant manager on September 1, 1983.

When plaintiff asked Greg McAdams, an agent in the search firm of Nenstiel & Associates with whom plaintiff worked in his search for employment, about a written employment contract, plaintiff was informed that it was Manville's company policy not to have written employment agreements. Also, Manville's employment policy for salaried employees did not exist at the time Walker was hired; Manville distributed its Employee Handbook in June, 1984, 10 months after Walker began with Manville. Plaintiff read the handbook and raised no questions about his supposed employment contract or about the handbook.

In September, 1984, plaintiff's salary was increased to $54,000 per year.

In November of 1984, Robert Mills replaced Jerry Parker as plaintiff's supervisor. Plaintiff alleges that Mills then "began a vicious and ruthless campaign to reduce [plaintiff's] effectiveness as plant manager and told deliberate untruths to President Sherman about [plaintiff's] performance."

In February of 1985, plaintiff became concerned that his job was in jeopardy. In March of that year, Mills took away plaintiff's ability to promote and hire employees.

In May, 1985, a corporate security representative who had investigated the possibility that the Cincinnati plant's major ink supplier, Croda Ink, was cheating the plant, released his report concluding that several improprieties involving Croda Ink had occurred. As a result, plaintiff was told to stop dealing with Croda Ink's representative John Sosha and was directed to give Croda Ink less business. Defendants maintain that plaintiff continued to deal with Sosha and to let him have run of the plant despite the fact that plaintiff understood that Sosha was personally responsible for cheating Manville; plaintiff contends that Mills deliberately misinformed Manville's President about the Croda situation and then recommended plaintiff's termination.

From June 17 to July 27, 1985, there was a strike at the Cincinnati plant. While management was running the plant during the strike, Mills ran the plant as plant manager instead of plaintiff.

On July 29, 1985, Mills terminated plaintiff's employment citing dissatisfaction with plaintiff's performance. Ron Hammons was also at that termination meeting. The meeting was held in plaintiff's office with the door closed and no one else was present besides plaintiff, Mills and Hammons. Plaintiff did not mention any employment contract at that meeting. Plaintiff then cleaned out his desk and left under the supervision of a security officer.

Plaintiff was not given four months to improve his performance, nor was he transferred to a job with much greater probability of success prior to his termination. Also, plaintiff was never placed on probation. Plaintiff also asserts that Mills had

not reviewed plaintiff's Work Performance and Review Documents ("WPAR") which is the tool used by supervisors to review an employee's past year performance.

On June 10, 1986, plaintiffs filed this action.

In viewing the evidence and all inferences to be drawn therefrom in the light most favorable to the plaintiffs, the Court finds that there are several genuine issues of fact material to plaintiffs' causes of action based on 1) breach of employment contract, 2) promissory estoppel, 3) tortious intentional infliction of emotional distress, and 4) loss of consortium.

Upon consideration of the facts presented and arguments advanced by the parties, this Court concludes that only a jury can properly resolve the important issues of fact and make the critical credibility determinations with regard to those claims; therefore, this Court cannot, as a matter of law, dispose of any issue relating to those claims on summary adjudication.

Accordingly, to the extent that the Magistrate's Report and Recommendation concludes that summary judgment is appropriate on the breach of employment contract and promissory estoppel claim, those portions of the Magistrate's Report are REJECTED by this Court. The Court ADOPTS the portions of the Report and Recommendation, however, that address the issues involving the tortious intentional infliction of emotional distress and loss of consortium claims.

■ With regard to plaintiffs' claim for tortious interference with a business relationship, after viewing the evidence and all inferences to be drawn therefrom in the light most favorable the plaintiffs, the Court finds that there are no genuine issues of fact material to this cause of action. The Court finds that the Magistrate has accurately set forth the applicable law and has properly applied it to the particular facts of this case on that issue. Further, plaintiffs' objections to that ruling have either been adequately addressed and properly resolved by the Magistrate in his Report or present no particularized arguments that warrant specific responses by this Court. The Court agrees with the Magistrate that the law does not support plaintiffs' cause of action for intentional interference with a business relationship where, as here, the act complained of is within the scope of the defendant's duties.

Based upon the foregoing, the Magistrate's Report and Recommendation (doc. no. 30) is ADOPTED IN PART and REJECTED IN PART in that the Court concludes that there are material questions of fact concerning the plaintiffs' claims for breach of contract, promissory estoppel, intentional infliction of emotional distress and loss of consortium; summary judgment is, therefore, DENIED as to those claims. Further, the Court finds that there is no genuine issue as to any material fact with regard to plaintiffs' claim for tortious interference with a business relationship and defendants are entitled to judgment as a matter of law on that claim.

Accordingly, completion of discovery shall occur on or before April 14, 1989; this matter is hereby SET FOR JURY TRIAL on June 19, 1989 at 9:30 A.M. and the parties shall file a Joint Final Pre–Trial Order on or before the close of business on May 22, 1989.

IT IS SO ORDERED.